Coleman and Castro v. United Services Automobile Association, 25-793. Each side will have 15 minutes. Matthew Seligman for Coleman and the plaintiffs. I'd like to reserve three minutes for rebuttal. May it please the Court. Section 1861.16b of the California Insurance Code requires auto insurers in California to sell statutory good drivers, quote, a good driver discount policy from an insurer within its common ownership, management, or control group, which offers the lowest rates for that coverage. That requirement applies, the statute continues, notwithstanding the underwriting guidelines of any of those insurers or the underwriting guidelines of the common ownership, management, or control group. There's no dispute in this case that USAA, via United Services and GIC, violated that requirement. There's no dispute that USAA allocated enlisted military personnel and veterans to its higher-priced GIC subsidiary and refused to offer those service members and veterans the lower-priced good driver policy it sold via United Services. So, counsel, what is the remedy here that your plaintiffs, your plaintiff clients are seeking here? Is it that United Services should be offering the policy to the plaintiffs? Not quite the close, Your Honor. And so what the text of Section 16b says is that an insurer, here GIC, must offer the lowest-priced policy from any of the insurers in the corporate ownership group. And as the facts were retrospectively, that was United Services. And so that's what Section 16b requires. Now, I'll note that there are numerous ways where a common ownership group of insurers can satisfy the requirements of Section 16b, and this is critical because it shows how to reconcile the requirements of Section 16b and the statute that USAA relies on, Section 11628F. In addition to selling an insurance policy that was issued by United Services to the enlisted members in our class, In addition to that, the other ways in which USAA can comply with the requirements of Section 16b are, first, it can take advantage of the statutory exemption in Section 16c, which says that if basically they're no longer under common control, just under common ownership, and there are a bunch of other statutory requirements that have to be set, then Section 16b doesn't require. In addition to that, it can abandon the affiliate structure, which is what most insurance companies did after Section 16b was enacted. And so it can say, OK, we're no longer going to offer insurance through these affiliate structures. We can simply have one affiliate structure. Third, it could have GIC price match the policies that are sold via United Services. And third, lastly, what we wouldn't want is that they can stop selling to enlisted personnel. These are a variety of ways in which USAA can comply with the requirements of 16b while continuing to have the statutory exemption of claims in Section F. There's nothing, and this is the quote of the statute here, nothing in the insurance code shall prohibit an insurer from limiting the issuance or renewal of insurance to military personnel, veterans, or family members or segments thereof. And the interpretation that we've offered, nothing prohibits them from doing that. And the reason is because there are a half dozen other ways that they can comply with the requirements of Section 16b. But the remedy you had been seeking before, and it sounds like maybe it's changing now, was that you wanted to compel United Services to offer policies to enlisted. That's a remedy that we've asked for retrospectively. And the reason why we're asking for that retrospectively is because they were sold. Let me start there. That retrospective relief, doesn't that run right into the teeth of 11628F1? Wouldn't it be prohibiting then United Services from limiting its insurance issuance to officers? So there are a couple of responses to that question. First, the statute doesn't say that no relief to any lawsuit shall compel. It says nothing in the statute. But holding that aside, at most what you're saying is there's an apparent conflict between Section 16b and Section 11628F. I don't think there is a conflict for the reasons that I've stated. And let's remember that the text of Section 16b says notwithstanding the underwriting guidelines of any of these insurance companies and the placement rules that USAA refers to are underwriting guidelines. And so – and Section 16b, which was enacted after, seems to trump Section 11628F there. How does it trump when F says nothing in 16b shall prohibit United Services from limiting its issuance of insurance to officers? Because as I said before, there are multiple ways in which USA can comply. Right, but as to the retrospective relief. As to the retrospective relief, what we're asking for is the difference in price. I'm confused about your earlier answer about the retrospective relief because it seemed like I thought your difference in price was basically like the fourth on your list when you were giving the ways. It was saying that the GIC – is that how you're saying it? That GIC could offer the same discount that USAA offered, and then that will balance it, and retrospectively they'd give that extra discount. But you said something else, that you instead want them to switch who their insurer was retrospectively? So I understand that that sounds a little bit counterintuitive, but that's actually what the text of these statutes indicate the legal requirement is, and that's why we articulated the relief that way. But the dollar value ends up being the same. Didn't you have to seek retrospective relief in the manner you originally sought, which is that United Services has to offer? Because otherwise, if you wanted the refund from GIC, you would run into an approved rate doctrine problem. So that's alleged by USAA, but there is no such problem, and so let's talk about the filed rate doctrine. So first of all, the filed rate documentation in this case includes a disclaimer by the Department of Insurance that says if anything in the documentation related to the filed rate violates any California law, then that portion is specifically not approved. And so even if in its strongest, most robust articulation, you have a doctrine that says anything that's approved by the Department of Insurance can't be attacked collaterally. But what we have here is the Department of Insurance saying anything that violates California law, for example, Section 16B, isn't – specifically isn't approved. Do they always say that? It does, yes. So then that doesn't really seem to be helpful to you because there is this filed rate doctrine. So the – so let's talk about the scope of the doctrine. So the case that the – that USAA relies on here, McKay, is limited to very certain circumstances, and a subsequent case by the California Supreme Court I think counsels in favor of limiting that case to those facts. So in McKay, the challenge there was about rating factors. It had to do with a surveillance device that would be installed in a car, et cetera. And the question of whether that could be used as a rating factor in the actuarial analysis of setting insurance rates. And what the McKay court said – and this – there was a division in authority at the time among the intermediate California courts, which is where McKay was decided. McKay said when you're considering something like these rating factors, you can't challenge the filed rate. I'm more worried about Davis versus CSAA insurance exchange about the COVID – the amount of driving during COVID. Do you know that case? Yes. So, I mean, the court of appeal – the California court of appeal there said because you're trying to get retroactive relief for a rate that was approved, we're not going to let you do that. The idea was people paid rates assuming they were going to drive, and then they were sitting at home and not driving, and they tried to get retroactive refunds, and the court said we can't do that. Well, so I think the fundamental commonality between McKay and Davis that makes it different than this case is those had to do with rating factors, and this doesn't. So the Villanueva case – Well, it was really like a categorical legal argument that circumstances had changed. I mean, I'm not sure it really is any different than your thing that you should get a different rate. You get a different discount. I disagree, Your Honor, and I think the California Supreme Court in Villanueva in 2020 made that distinction. So what Villanueva discusses, it discusses the origins of the filed rate doctrine. It has a statutory origin that says nothing about filed rate doctrine. It just says that Section 1860.1, which is the statutory basis for it, it applied only to exempting insurance companies from antitrust actions. The reason why the insurers wanted that is because they exchanged rate data and accident actuarial data. And so the California Supreme Court said, look, we're not going to necessarily go all the way and hold that all of the filed rate doctrine cases were incorrectly decided. But it did say that when there's an external legal requirement, and it gives an example in the case. When there's an external legal requirement, and the example it gave in that case is an anti-discrimination lawsuit, it doesn't mean that you can't bring a civil action here. Moreover, Prop 103 itself created a civil cause of action to enforce its requirements. And so the source of all of these legal requirements in Section 16b is ultimately Proposition 103. And the people of California adopted in Proposition 103 and expressed civil cause of action. And so whatever the viability of the filed rate doctrine more generally, the people of California specifically overrode it with respect to Section 16b. Counsel, I'd like to direct you to footnote five of the district court's opinion. Judge Huey said plaintiffs are not arguing that GIC had an obligation to retain its insured good drivers but offer them a discounted or lower rate based on what United Services would have charged. And then he cites a pleading quote. I think this is from your brief. This case is about which policies, GICs or United Services, should be offered to class members. It's about the sale of the wrong policies. So both with respect to retrospective and prospective, aren't you arguing, aren't we limited to deciding whether it's required for United Services to change the way it issues its policies so that to expand its offerings to enlisted members? I don't think so. And so the reason is because, again, retrospectively, there were a bunch of ways they could have complied but didn't comply. And given the pattern of unlawful conduct that they actually engaged in, which was to engage in this unlawful pricing practice using an affiliate structure that they didn't have to use and so on, then given all of that, then yes, the natural relief is for the difference in price between the United Services policy that they could have been offered and weren't. So GIC would offer that lower price?  And again, I understand that this is a little bit of a counterintuitive way of thinking about how the policies are sold. But it's because these are corporate affiliates that the legal obligation in 16B, as it's articulated, is for the insurance company to sell the policy of its corporate affiliate that happens to be the lowest price. Now, it's also true. Oh, wait. Sorry. It would be GIC doing that, though. Correct. I'm quite confused. I hadn't focused on this issue before today. So this issue of what relief you exactly requested seems to have shifted over time, looking at this footnote. Because if you were before saying United Services had to offer policies and somehow do it back in time compared to GIC owes now a refund, those feel different to me. No. Let me try to reconcile those. And so the insurance policy under the terms of Section 16B would be issued by United Services but sold by GIC. And that's exactly in the text of Section 16B itself. And the reason why the statute is structured here is because these are all corporate affiliates. You call one call center. And the reason we know this is because USAA hasn't claimed to qualify for what's called the supergroup exception in Section 16C. Now, I want to make sure that I address another point here because I think it's dispositive to the case. Under the interpretation of Section 11628F offered by USAA, the statute is unconstitutional. And so this court should not adopt the construction of Section 11628F that leads to the unconstitutionality of that statute. And so let me explain why. The origin of these legal requirements is in Proposition 103. Proposition 103 is the source of the original all comers policy that established the statutory good driver discount that all insurance companies had to honor. After that, the insurance companies came up with a way of evading that requirement by setting up this affiliate structure. The Department of Insurance realized that that was a way to evade it and started issuing regulations to ban it. And then the legislature stepped in. And it amended Proposition 103. And so let's talk about the process for amendment because this is critical to the constitutional question. So the California Constitution, Article II, Section 10C, says that citizen initiatives like Proposition 103 can be amended only with the approval of the voters or by the terms that the initiative itself sets up. And Proposition 103 gives the procedures by which it can be amended by the legislature. So it has to be passed by a two-thirds majority, and it has to further the purposes of the proposition. And so you're running out of time, so just to cut to the chase, you're arguing that 1861.16b is actually now part of the Constitution? Yes, and I'll be very clear about this. It was not part of the original part of the original citizen initiative text, but it became it when it was amended and so therefore has the same hierarchy of law. And how do we know that when the legislature passed that to further the purposes of the proposition that it was actually amending the proposition rather than just passing a law? Well, I mean, I think it was said so in the record at the time. Everybody recognized that it was targeted at this way of evading the good driver discount. But does that mean it's amending the Constitution as opposed to just passing a law that is allowed because it doesn't conflict? Well, there's nothing in the text of Proposition 103 that requires a specific declaration. It was passed unanimously, and so it satisfied the requirements. And there are other – so I think the California cases on this are pretty clear that if those requirements are satisfied, then it becomes part of the citizen initiative, and it doesn't require a separate statement by the legislature. Sorry, where do we look for the idea that a law becomes part of the Constitution? Well, so it becomes part of the citizen initiative, and then the Constitution itself, Article II, Section 10c, says that legislature can't do anything that is contrary to a citizen initiative. Where is the part that says it becomes part of – goes back in time and becomes part of the citizen initiative rather than just a law? Because it says the word amend. And so it amends the citizen initiative. It doesn't say that it's – the legislature may offer that. I see. So the text of 1861 16b says we are amending? No, no, no. Proposition 103 sets out the requirement for amendment. But there's – and it says – Is itself an amendment of Prop 103? I mean, I think there's no requirement in California law that there be a separate procedural step that's satisfied. Except for your argument that we have an improper amendment in the later law, it needs to have become part of the Constitution. And I just don't see why we think that that is what happened when 1861 16b was passed. Well, again, I think the reason is because it does further the purpose of the citizen initiative. And it passed by the requisite two-thirds majority and, indeed, unanimously. And so there are other cases in California law – and I'm happy to provide those to the court afterwards – that address the issue of whether a subsequent legislative enactment validly amended a prior citizen initiative. And the two elements of the test – and the only two elements of the test – whether it furthers the purpose. And there are cases on Prop 103 with respect to this, whether it furthers the purpose and whether it was passed by a two-thirds majority. That's how we know, period. Let's hear from the other side. Thank you. Good morning, Your Honors, and may it please the Court. On behalf of the defendants and appellants, United Services Automobile Association – that's USAA or United Services, as we call it in this case – and USAA-GIC – I'll call it GIC, not GIC. I want to reframe the discussion a little bit because, to me, it's not about remedies. It's about what is the violation. What specific thing do plaintiffs claim that either United Services or GIC was supposed to do that it didn't do? And I would submit that walking through that analysis brings you right into, I believe as Judge Tong put it, the teeth of 11-628-F1. So all along the theory in the complaint, the class certification order, the class as defined in the order, the opening brief said that United Services was supposed to insure all these folks. United Services was supposed to insure all the GIC good drivers, the enlisted people who didn't qualify for United Services, but because they're good drivers, that United Services has to write the policies, has to issue the policies. But that is straightforwardly into the text of 11-628-F1. So today he's arguing GIC could just give the same type of policy that United Services was giving. That's what I heard, Your Honor. Obviously, that's a new theory today. I think there's a hint of it. I had somehow thought that was their theory in their brief, but I'm now appreciating that there's more nuance. No, there's a hint of it in the reply brief. Certainly wasn't the case litigated below. Certainly wasn't the class as defined. Wasn't the basis of their damages theory. And so are you saying that's forfeited, that theory? Well, it's forfeited, but even if it's not, there's a bunch of problems with it. One, the text of the statute they're relying on, 1861.16b, it says that the policy has to be sold by the company that offers the lowest rate. So that's United Services here. GIC has to, again, whatever GIC does, the policy has to be issued by United Services because that's the company with the lower rate. So that doesn't even jive with the text of the statute that plaintiffs are advancing. Two, in California, and I don't think we briefed this as heavily because it wasn't an issue until now, but in California, GIC cannot legally charge anything other than the rate that the insurance commissioner has approved. There's a civil penalty for that. Right in Prop 103 itself, that's the point of Prop 103. It's a prior approval scheme. You can't just change your rates on the fly. You have to charge only the approved rate, and there's no dispute here. The only rate GIC has been approved to charge is its rate. And then third, the filed rate problem that I think the court had raised. You're asking an insurance company to change the approved rate in response to this lawsuit, and that's not something that you can do. Okay, let's say we agree with you about all of that. I think then we get into this amendment issue that we ended with. Can you answer this question of how we know whether this statute amended the Constitution? I want to clarify something. It's just an important framing device. Prop 103 is not the Constitution. It never was. Prop 103 is a statute. It's an initiative that resulted in a statute. It didn't result in any changes to the Constitution. It resulted in a whole chapter of the insurance code. It's Chapter 10 of the insurance code, so I'm not sure that matters. Okay, maybe I was misunderstanding that. Okay, well, so if that's true, so what are these restrictions on the amendment? Restrictions on amendment, though, I thought were restrictions on how you amend the Constitution.  The California Constitution has restrictions. When something is enacted via initiative, the California Constitution has restrictions on how the legislature can then mess with that, right? If the people put something forward in initiative, it results in a statute. That statute has some sort of super statute power. Exactly, that the legislature cannot amend except for as specified in the initiative itself. So here the question is, are we amending Proposition 103? No dispute here that 1861.16 is not part of Prop 103, right? And it was a later legislative enactment. And there is zero case law that would support the notion that a later legislative enactment in the same subject, in the same area, that touches on some of the things from Prop 103, becomes then retrospectively part of Prop 103 to take on that super statute status. No cases at all. But in 16.16, that provision closed a loophole that Prop 103 produced. That was the thinking behind the 16th statute. And I would point out, Your Honor, that loophole was in the take-all-comers requirement, what we call 1861.02b. That is the take-all-comers requirement. But everyone agrees United Services and USA was never subject to that requirement. That's the whole point of 11.628.F1, which was concurrent. It was actually before Prop 103 went into effect. So if you step back, what we're talking about here is a patch to fix a loophole to something that never applied to USAA to begin with. And everyone agrees on that. So to answer Judge Friedland's question, no case law whatsoever to support the notion that you could create, the legislature could enact something a year or two after Prop 103, and because it touches on the same subject, it then takes on, in hindsight, the super statute status. In any event, I would point out that the USAA statute, 11.628, came before 1861.16b. Did 11.628 also come before Prop 103? Before Prop 103 went into effect. So what happened was Prop 103 was going through the works. Nobody thought that it applied to USAA, but USA was concerned that, hey, anyone could read this to say that we can no longer do what we do and we've done for 100 years and ensure only military officers. So to be doubly sure, the USAA sponsored and the legislature enacted something, 11.628.F1, that went into effect before Prop 103 did. So they're sort of concurrent. Real quickly on the constitutionality, again, this is another new thing that is coming up, because plaintiffs have been very clear from the start of this case and throughout the arguments, and even in their appellate briefing, they're not attacking 11.628.F1 as itself being unconstitutional. That's something that they conceded during the argument before the district court. They were very clear on that during the argument. The court pressed them on that. It's a footnote in the court's opinion. And then even in the reply brief on page 41 through 42 in this court, they said the question of the constitutionality of the underlying provision is not before this court. So that is not something that they've ever attacked. There would be no good reason to attack it anyway, because it's very clear that everyone during the Prop 103 time knew that USAA was going to be exempt from this. That's what they are. That's who they are. They're a specialty insurer. They're not like the state farms in the all states of the world that should take all comers. USAA had always been about military officers and the segmentation within the military itself. But their argument is that as applied, according to your reading, it would render that statute unconstitutional because it would allow different affiliates to charge different good driver or offer different good driver discounts. And that seems to be contrary to the spirit or the purpose of Prop 103 plus the 16 provision. That was meant to give people who are seeking insurance the best good driver discount. That doesn't apply to the insurers who are insuring enlisted members or officers. So clearly that was the intent of 11-628-F1, Your Honor, that we were going to be exempt from that. And if the argument is that's unconstitutional somehow because that's against the spirit of Prop 103. It's not unconstitutional by, I guess, restricting the all comers provision. It's only unconstitutional with respect to the discriminatory treatment. I'm not sure I completely understand, Your Honor. If it's not unconstitutional from the start because there's no dispute here and there hasn't been a dispute that we were never subject to take all comers to begin with, then the subsequent statute that came after, you can't, again, it all presumes that the subsequent statute, 16B, takes on the super status of Prop 103, which we say it doesn't. There's no cases at all that say that. But that also presumes that there's something inconsistent about what USAA was doing. When we would submit, that was the point all along. USAA was always going to be allowed to segment the way that it did. That's how the statute's written. It's no accident the statute's written the way it was because it was for USAA, that we segment between different categories of military service. I mean, that's really how the military works if you think about it. It's based on segmentation, the differentiation between officers and enlisted people. That's how the company's been set up and it's been run for a long time. I would mention again, Your Honor, this constitutional argument is at least as to the take all comers requirement. If that's somehow a problem, that's never been a problem in the case. They absolutely said that in their reply brief at 41 through 42. They're not taking on that question. And the smaller constitutional question about the 1861.16B, that's based on the premise that that somehow occupies super statute status when there's no case law to support that at all. This case presents some complicated questions of California insurance law and California legislative process. Why shouldn't we certify this to the California Supreme Court? Well, one, we think that there's a presumption against certification. This is not a do-over mulligan statute. This court's cases have said that you don't just get to lose and then get a second bite of the apple. Remember plaintiffs, we think they should have raised this with the regulator to begin with. We think we've made our filed rate argument. Certainly no dispute they had a chance during the various rate applications, including during dependency in this case, to raise it before the regulator. They didn't. Could have filed in state court. They didn't. Can I ask about that? Have we ever talked in our case law about certification, about whether the idea that someone files in federal court means we shouldn't certify? I mean, I understand the logic. There's like an estoppel kind of notion. But has it ever been discussed by our court or by California courts? I'm not aware of it, Your Honor, if it has. It seems like there's a contrary point to be made, which is the reason that we certify it to a state supreme court is so that we don't mess up state law, which is not really our domain. Just not our domain. Right. So it's not that we certify really for the benefit of the parties. We certify for the benefit of the law and respecting the respective sovereign jurisdictions of state and federal governments. So I'm not sure why does any of that matter? I mean, I understand the argument, too. It sounds like estoppel. It feels like a little bit of unclean hands or something, whatever you want to call it. But at the end of the day, if the right answer is we really need California to answer some of these complicated California law questions, should any of that matter? I would submit I only mention it because it's in the case law. It's in this court's discussion about the gamesmanship. And so that's why I mention it. If we get to the point you're making, though, Your Honor, it's not that complicated of a question. The district court decided it purely on text. It didn't need to go into policy. It didn't need to go into common law or tort theories. This is a straightforward textual application. This is a case also that is about USA only. When pressed a number of times, no one's ever been able to come up with any other insurance companies that would be affected by this. So this is really this case. This is all about this case. We're not setting precedent for future cases to guide future courts or to guide future litigants. Whatever happens here in this case is going to be the end of it, at least as far as the parties have been able to say. Which almost sort of counsels in favor of, you know, more so having California have their word. How do you want this insurer to be treated? Right. This insurer is already being treated sort of in its own category amongst insurers under California law. And maybe California wants to define the parameters and bounds of that. And why would that be? I mean, and also, yes, it's one insurer. There are a lot, a lot of veterans and military personnel in California. And they're all class members, Your Honor. This is a certified class. Right, so it's not. But this is, I mean, the suggestion that this is some little case because it's just one little issue and it's only going to affect one little insurer, that's not true. This is a big deal. It's going to affect a lot of people. No, my suggestion, certainly this is not a little case. It's an important case. That's why we're here. My point is simply that there is not a bunch of follow-on litigation. This is an issue that has come up only once in the 30 years or so since Prop 103 has been around. There's no, at least as I can see it, no scenario in which it comes up again once the district court's decision is, you know, if this court affirms it, then we're done. But that goes to Judge Forrest's point. Why don't we allow the California Supreme Court to take that first and potentially only shot at this question? Well, because, I mean, that would be true in pretty much every case, Your Honor. I mean, it's a rare thing. There's a presumption against certification. I would also, again, remind the court Prop 103 is supposed to funnel a lot of this into the insurance commissioner himself or herself. The insurance commissioner has been dealing with USAA for 30 years since Prop 103 consistently. Nobody disputes that the rate process happens every few years. The commissioner has looked precisely at this issue, this differentiation we're talking about between officers and enlisted and who insures whom, baked into the rates themselves. And that's the way the process is supposed to work under Prop 103. We create a strong elected insurance commissioner. And so I would submit the statute is actually pretty straightforward. Nothing means nothing. There's no real need to consult public policy. You're asking this court and you'd be asking the California Supreme Court to apply very basic statutory interpretation methods that aren't really in dispute. There's nothing new about that. You're just applying them to a statute that the courts haven't looked at. But we would say that the statute's very clear and the district court didn't need to go beyond the text and this court shouldn't either. And in that scenario, there really isn't a need to burden the California Supreme Court with, you know, it's a very busy docket, which is also one of the considerations with a case like this. Thank you. Thank you very much. Thank you, Your Honors. As came up at the end of the discussion with my colleague here, I think this argument has shown that certification is appropriate in this case. This does raise a number of very difficult questions of California law that have not been resolved. And there are no cases directly on point. And we heard my colleague say that there are no cases directly on point, for example, with respect to whether a valid amendment of Proposition 103 also can't be amended except by the processes that are articulated in Proposition 103. I think that the California law indicates the answer to that is that it does inherit the super statute status. And my colleague has said he's not aware of a case to the contrary. And that would be dispositive to the case. That's also a question that goes beyond just the four corners of this case. Now, Your Honor, Judge Forrest is absolutely right. There are hundreds of thousands of enlisted personnel, hundreds of thousands of officers to whom this case applies. So this isn't a one-off small case. This is very important. And the issue of the good driver policy is something that the people of California thought was important enough to go through an entire citizen initiative process precisely in order to grant it the status of a super statute. So I think all the factors here line up. If the court is concerned about the ambiguities of the statute, now, again, we think that we have a way to resolve those ambiguities without implicating the constitutional issue. But to rule in favor of the other side, you have to blow past these issues to expand the filed rate doctrine beyond anything that it's ever been before and to undermine the process of the super statute that was enacted and adopted by the people. Are you aware of any time that we've certified in a case where the plaintiff who chose to file in federal court in the first place is the one asking for certification? I'm not, but I'm sure that I can provide citations for you later on this. There's simply no basis in law. You know, it would be very easy for either this court or for the California Supreme Court to say that we only take certification from defendants or we only take certification from plaintiffs who remove whose case was removed to federal court. There's absolutely no basis in law for that. And it's a very simple rule. And there's no reason to think here that we were being strategic to try to get a more favorable statutory interpretation from the federal courts than than from the California state courts who have traditionally been quite favorable to citizen initiatives. So, you know, I think that's just speculation about gamesmanship that has no basis either in law or in the record. Why did you decide to file in federal court? And so my understanding is because we knew that they would remove and we wanted to skip that step. OK, thank you. We were over your time to start with it. We're now we're more over your time. So thank you very much both sides for the helpful arguments. This case is submitted and we're adjourned. All right. This session now stands adjourned.
judges: FRIEDLAND, FORREST, TUNG